UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STANISLAV RODRIGUEZ-FERNANDEZ,

Petitioner,

v.

PAMELA BONDI, et al.,

Respondents.

Case No. 2:26-cv-00170-TMC

ORDER ON HABEAS PETITION

Petitioner Stanislav Rodriguez-Fernandez is an individual who is detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. He petitions the Court under 28 U.S.C. § 2241 for relief from physical custody, arguing that his detention has become indefinite in violation of the Immigration and Nationality Act ("INA") and requesting an injunction restricting his removal to third countries. Dkt. 5.

For the reasons stated below, the Court GRANTS the petition and GRANTS IN PART and DENIES IN PART Petitioner's request for a permanent injunction.

## I.    BACKGROUND

Petitioner is a native and citizen of Cuba who arrived in the United States and was detained by U.S. Border Patrol on January 19, 2009. Dkt. 5 at 6; Dkt. 9 ¶ 5. Petitioner was charged as removable and then released under an Order of Release on Recognizance that same

ORDER ON HABEAS PETITION - 1

day, before being re-detained on January 29, 2010. Dkt. 9 ¶¶ 5–8.[1] On February 16, 2010, an Immigration Judge ("IJ") found Petitioner removable to Cuba. *Id.* ¶ 10. On February 22, 2010, Petitioner was placed in deferred action status and was released under an Order of Supervision ("OSUP") the next day. *Id.* ¶ 13; Dkt. 10-1 at 2–3.

On April 23, 2012, Petitioner was convicted of "Possession of Outboard Motor with Altered or Removed Serial or Hull Numbers" and trafficking cannabis. Dkt. 9 ¶ 14. He was sentenced to 24 months in prison. *Id.* On September 15, 2022, Petitioner was convicted of being a felon in possession of a firearm. *Id.* ¶ 15. He was sentenced to 37 months in prison. *Id.*

Petitioner was re-detained by ICE's Office of Enforcement and Removal Operations ("ERO") on May 27, 2025, when he "reported for a check-in with ERO Miami." *Id.* ¶ 16. ERO revoked Petitioner's OSUP, transferring him to the NWIPC on June 1, 2025. *Id.*; Dkt. 10-3. Kurtis Reed, a Deportation Officer at ERO, submitted a declaration in this case. Dkt. 9. Reed avers that ERO served Petitioner "with a notice of third country removal for Mexico" on June 25, 2025, and again on December 23, 2025. *Id.* ¶¶ 17–18. In both instances, Petitioner refused to sign the notice. *Id.*[2] Reed also avers that "Mexico has been accepting Cuban citizens, and ICE believes there is a significant likelihood of removal in the reasonably foreseeable future that Petitioner will be accepted." *Id.* 19.

---

[1] Petitioner was first charged as removable pursuant to § 212(a)(6)(A)(i) of the INA as an "alien present in the United States without being admitted or paroled." Dkt. 9 ¶ 6. On January 29, 2010, U.S. Immigration and Customs Enforcement ("ICE") charged him as removable a second time under a different A-number, or "alien number." *Id.* ¶¶ 6–7. There, he was charged as removable under both § 212(a)(6)(E)(i) and § 212(a)(7)(A)(i)(I)—for assisting "any other alien to enter or to try to enter the United States in violation of law" and for not possessing valid immigration documents, respectively. *Id.* ¶ 7. According to Respondents, "despite there being two alien numbers for the Petitioner, each one comes back to him. The biometrics from both alien numbers match the Petitioner as well." *Id.* ¶ 11.

[2] Petitioner submits evidence of a third such notice, dated November 7, 2025. *See* Dkt. 5-1 at 2 (notice with "Refuse to Sign" on the line requesting Petitioner's signature).

ORDER ON HABEAS PETITION - 2

On January 16, 2026, Petitioner filed his proposed habeas petition along with motions for leave to proceed *in forma pauperis* ("IFP") and to appoint the Federal Public Defender as counsel. Dkts. 1, 1-1, 2. The Court granted IFP, appointed counsel, and set a briefing schedule on January 20, 2026. Dkts. 4, 6.

Petitioner argues that his detention has become indefinite because there is no significant likelihood of his removal to Cuba or Mexico in the reasonably foreseeable future. Dkt. 5 at 8–10. He also claims that Respondents have engaged in a scheme of punitive removal to third countries "without providing fair notice and an opportunity to contest the removal in immigration court." *Id.* at 21. Petitioner asks that the Court release him from custody and prevent Respondents from re-detaining him unless they obtain a valid travel document to Cuba, provide a hearing to assess whether he is a flight risk or danger to the community, and provide an opportunity to contest the removal. *Id.* at 30–31. Respondents filed a return brief on February 3, 2026. Dkt. 8. Petitioner filed his traverse on February 6, 2026. Dkt. 11.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens[3] subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained

---

[3] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Additionally, the federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To demonstrate that ongoing relief is needed, the party seeking a permanent injunction must establish "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (alteration in original) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

ORDER ON HABEAS PETITION - 4

### III.   DISCUSSION

**A.   Petitioner's detention has become indefinite.**

Petitioner is a noncitizen who has been present in the United States for 17 years. Dkt. 5 at 6. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. Having been detained already for a cumulative eight months since an IJ ordered his removal, Petitioner's continued detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.[4]

Petitioner's evidence and uncontroverted assertions showing (1) the government's failure to deport him for 17 years, Dkt. 9 ¶ 13; (2) a backlog of over 34,000 Cubans with final removal orders largely untouched by a few hundred removals each year, Dkt. 5 at 7 n.1; (3) that the Cuban government is especially unlikely to accept removal of Cubans convicted of criminal offenses, *id*. at 6–8; and (4) that the government detained Petitioner without securing a travel document and failed to remove him between May and February, *see id*. at 7, "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Id*. In response, the government does not argue that Petitioner's removal to Cuba is likely. *See generally* Dkt. 8. Instead, they submit that "ICE believes that Mexico will accept Petitioner." *Id.* at 10 (citing Dkt. 9 ¶ 19). But Respondents—who have the burden here—provide no evidence to support this assertion. Respondents do not explain the process required for third-

---

[4] Petitioner proposes that the six-month "presumptively reasonable" grace period "runs unabated once Petitioner's removal order was final, and does not run solely during any period when Petitioner was detained." Dkt. 5 at 9. The Court need not resolve that issue here, because, even under a standard that only runs while Petitioner is detained, the presumptively reasonable period has expired.

ORDER ON HABEAS PETITION - 5

country removals to Mexico, for example, or explain what steps they have taken with the Mexican government to arrange for Petitioner's arrival.

Respondents note that they served Petitioner with two notices of removal to Mexico which he refused to sign. Dkt. 9 ¶¶ 17–18. But they ignore Petitioner's contention—supported by an ICE officer's declaration in another habeas case—that the Mexican government only accepts individuals who *consent* to removal there. Dkt. 5 at 7–8 (citing Dkt. 5-1 ¶¶ 11–12) ("ICE drove Petitioner to the Mexican border to effectuate his third country resettlement, but Petitioner refused to willingly go to Mexico. . . . The Mexican government was ready to accept Petitioner only if he would willingly go to Mexico. . . . As removal to Mexico was unsuccessful, ICE no longer intends to seek to remove Petitioner to Mexico."). Given that Petitioner "refuses to be removed to Mexico and has declined to sign the Notice of Removal to Mexico," *id.* at 5, Respondents' representations are not persuasive enough to rebut Petitioner's showing that his detention has become indefinite.

Because there is not a likelihood that either Cuba or Mexico will accept Petitioner in the reasonably foreseeable future, his detention is no longer permitted by the INA as construed in *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful and he must be released. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable). The Court therefore GRANTS the petition for writ of habeas corpus. Dkt. 5.

**B.** **Respondents may not remove or seek to remove Petitioner to a third country without affording him meaningful notice and opportunity to respond.**

In addition to immediate release on his habeas petition, Petitioner asks the Court to restrict Respondents' ability to remove him to an unknown third country. Dkt. 5 at 17–20, 30–31. He argues that such an order is necessary because "Respondents have developed and implemented a policy and practice of removing individuals to third countries, without first following the procedures in the INA for designation and removal to a third country and without providing fair notice and an opportunity to contest the removal in immigration court." *Id*. at 20–21.

As discussed above, Respondents have notified Petitioner at least twice that they are seeking his deportation to Mexico. Dkt. 9 ¶¶ 17–18; *see* Dkt. 5-1 at 2. Petitioner presents evidence that, in cases where the government fails to remove a noncitizen to Mexico because they refuse, ICE "continu[es] to seek to identify a third country for repatriation." Dkt. 5-1 ¶ 12. The Court therefore finds that Petitioner faces a likelihood of third-country removal under the challenged policies.

The INA dictates the countries to which a noncitizen may be removed after a final order of removal is issued. *Jama v. ICE*, 543 U.S. 335, 338–41 (2005); *Dzyuba v. Mukasey*, 540 F.3d 955, 956 (9th Cir. 2008) (per curiam). In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection. 8 U.S.C. § 1231(b)(2). If the above options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama*, 543 U.S. at 341.

The government is prohibited from removing a person to a third country where they may be persecuted or tortured. Section 1231(b)(3)(A) provides for withholding of removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113, prohibits removal of a noncitizen to a country where he is likely to be tortured. *See* 8 CFR §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). "Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, a noncitizen's removal order remains valid and enforceable, albeit not to the identified country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson*, 594 U.S. at 536; *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (explaining that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

      1.     *Petitioner's claims are not barred by D.V.D.*

Respondents argue that Petitioner's third-country removal claims are barred by the *D.V.D.* class action. Dkt. 8 at 12–13; *see Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). There, the district court certified a class consisting of:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

ORDER ON HABEAS PETITION - 8

778 F. Supp. 3d at 378, 394. The court also granted the class's motion for a preliminary injunction establishing procedures that the Department of Homeland Security ("DHS") and ICE were required to follow before removing a noncitizen to a third country. *Id.* at 394; *see D.V.D. v. U.S. Dep't of Homeland Sec.*, CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (memorandum offering more guidance on compliance with the preliminary injunction). On June 23, 2025, the Supreme Court stayed the District of Massachusetts' preliminary injunction pending appeal in the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

Respondents argue that "[t]he Supreme Court's stay of the preliminary injunction entered in that case is both precedent and the result is binding on Petitioner here by virtue of his status as a member of the *D.V.D.* plaintiff class." Dkt. 8 at 12. As this Court has discussed previously, however, it is not clear whether the Supreme Court in *D.V.D.* "found the government likely to succeed on its jurisdictional or substantive claims." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 732 (W.D. Wash. 2025). "This distinction is especially important in this case, where one of the government's primary arguments—that the *D.V.D.* court had no power to enter *classwide* injunctive relief—would have no bearing on the merits of individual habeas petitions." *Id.*

Ninth Circuit precedent mandates notice and a hearing prior to removal to a third country. *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025). Absent clear guidance from the Supreme Court that those cases are no longer good law, this Court must follow precedent. *See Nguyen*, 796 F. Supp. 3d at 732, *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *5 (W.D. Wash. Dec. 19, 2025). Thus, the emergency docket order in *D.V.D.* does not preclude relief here. *Francisco Lorenzo v. Bondi*, No. 2:25-CV-02660-LK, 2026 WL 237501, at *8 (W.D. Wash. Jan. 29, 2026).

ORDER ON HABEAS PETITION - 9

2.    *DHS's procedures do not afford due process to Petitioner.*

On July 9, 2025, ICE issued a memorandum updating agency officials on its policy regarding third country removals after the Supreme Court's order in *D.V.D. v. Department of Homeland Sec.* Dkt. 1-4 at 2. The policy states as follows:

> Effective immediately, when seeking to remove an alien with a final order of removal—other than an expedited removal order under Section 235(b) of the [INA]—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, *Guidance Regarding Third Country Removals*, as detailed below. A "third country" or "alternative country" refers to a country other than that specifically referenced in the order of removal.

*Id.* The policy continues:

> If the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. HSI and ERO will be made aware of any such assurances.

*Id.*

Respondents contend that the above policy, and their notices to Petitioner of their intention to remove him to Mexico, satisfy his request to be provided with notice of third-country removal. Dkt. 8 at 13–14. But Petitioner seeks "notice and meaningful opportunity to respond *in compliance with the statute and due process* in reopened removal proceedings." Dkt. 5 at 31 (emphasis added). And "both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019) (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal

ORDER ON HABEAS PETITION - 10

proceedings must be reopened so that a hearing can be held. *Id.* at 1011; *see Nguyen*, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy.").

In light of the foregoing, Petitioner has met the requirements for injunctive relief. *See eBay*, 547 U.S. at 391. Respondents' notice that they intend to deport Petitioner to Mexico under the policy described above demonstrates a "cognizable danger" of removal to a third country with insufficient due process. *Cummings*, 316 F.3d at 897. Remedies such as monetary damages are clearly "inadequate to compensate for that injury." *eBay*, 547 U.S. at 391. And "because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the 'public interest would not be disserved by a permanent injunction.'" *Francisco Lorenzo*, 2026 WL 237501, at *10 (quoting *eBay*, 547 U.S. at 391).

The Court therefore GRANTS Petitioner's request for injunctive relief preventing his removal to a third country without notice and meaningful opportunity to respond in compliance with the INA and due process in reopened removal proceedings.[5]

3.      *The Court otherwise denies Petitioner's request for injunctive relief.*

Petitioner also requests an order that the government may not re-detain him unless it (1) obtains a valid travel document to a Cuba for him; (2) provides the travel document to him and his counsel; and (3) offers him the opportunity to leave on his own within two months. Dkt. 5 at 31. But the record does not contain sufficient argument or authority to establish that the Due Process clause will be violated in the absence of these specific procedures, particularly when any effort to re-detain Petitioner would be governed by the regulations set forth in 8 C.F.R.

---

[5] Because the Court finds that Respondents violated Petitioner's procedural due process rights, it need not consider his claim that Respondents' actions violated the Administrative Procedure Act. Dkt. 5 at 27–28; Dkt. 11 at 2–3.

ORDER ON HABEAS PETITION - 11

§ 241.13. *See id.* at 14–15 (acknowledging that § 241.13 governs revocation of release for noncitizens subject to a final order of removal). The Court therefore DENIES these requests for injunctive relief. The Court also notes that, once he is released from custody based on this order, Petitioner may undertake his own effort to obtain travel documents and leave the United States for a country of his choice that will accept him.

**C.      Petitioner has not shown that he is at risk of punitive removal.**

Petitioner also requests an order prohibiting Respondents from removing him "to any third country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." *Id.* at 31. In contrast to Petitioner's claim that he is being deprived of due process, the record does not contain sufficient evidence either that (1) removal to *any* third country would be punitive; or (2) that he faces a likelihood of removal to a country where he will be imprisoned upon arrival. *See Nguyen*, 796 F. Supp. 3d at 732–34, 736–39 (granting preliminary injunction prohibiting removal "to any country where [Petitioner] is likely to face imprisonment upon arrival" based on evidence demonstrating that petitioner was similarly situated to detainees who had faced imprisonment upon removal). While there is extensive evidence across multiple cases that the government is carrying out *some* third-country removals that are unconstitutionally punitive, the law surrounding permanent injunctive relief does not allow the Court to infer from those cases that *everyone* who faces third-country removal is likely to be subject to similar irreparable harm. Such facts do not exist here. The Court therefore cannot conclude that Petitioner faces a "cognizable danger" as opposed to a "mere possibility" of punitive removal at this time. *Cummings*, 316 F.3d at 897. This request for injunctive relief is therefore denied without prejudice.

## IV.    CONCLUSION

For these reasons, the Court GRANTS the petition for writ of habeas corpus and GRANTS IN PART and DENIES IN PART Petitioner's request for a permanent injunction. Dkt. 5.

1.    Respondents are ORDERED to release Petitioner Stanislav Rodriguez-Fernandez from custody[6] within ONE day of this Order.

2.    Counsel for Respondents shall submit a status report to the Court by the end of the day on February 18, 2026 confirming Petitioner's release.

3.    Respondents, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them, are PROHIBITED from removing Petitioner to a third country without affording him notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

Dated this 17th day of February, 2026.

_____
Tiffany M. Cartwright
United States District Judge

---

[6] Subject to reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3))."

ORDER ON HABEAS PETITION - 13